

**SIGNED this 20th day of April, 2011.**

_____
**LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE**

_____

# United States Bankruptcy Court
Western District of Texas
San Antonio Division

| | |
|---|---|
| In re | Bankr. Case No. |
| Ronald J. Reyes & Liza A. Reyes | 10-52366-C |
| *Debtor* | Chapter 13 |

## Memorandum Decision on Motion for Contempt

Came on for hearing the foregoing matter. The debtors filed a motion for contempt against Robert Wilson and Josie Jones for an alleged violation of the automatic stay. The facts are essentially as follows:

The debtors filed for chapter 13 on June 24, 2010. Prior to the filing, one Josie Jones sued Liza Reyes in state court, alleging that her conduct had caused Jones damages, relating to the handling of a real estate transaction. After the verdict was rendered, Jones and her lawyer, Robert Wilson, met with the debtor in a conference room at the courthouse. There, the debtor informed Wilson that they intended to file for bankruptcy. In response, Wilson, in the hearing of not only the debtor but also members

of the debtor's family, told the debtor that he would "run them out of business by filing a complaint with the TREC (Texas Real Estate Commission) and close them down to get the money." After the debtor filed for bankruptcy, Wilson, true to his word, filed a complaint in September 2010, on behalf of his client, with the TREC. The complaint took a number of months to prepare, and Wilson billed his client for the service. The TREC's procedures do not require a pre-investigation as a prerequisite to instituting such a complaint. Instead, the filing of the complaint itself necessitates an investigation by the Commission. If such an investigation results in a determination of wrongdoing on the part of the agent, and if a finding of damages is made, then the the TREC may make a monetary award to the complaining witness, and may subsequently seek reimbursement from the agent in the amount of the award. Wilson is well aware of these rules and procedures, this being one of his areas of practice.

Wilson has also been active in the bankruptcy case. On July 2, 2010, he filed a Motion for Relief from Stay on behalf of his client, which was later withdrawn. Subsequently, on July 6, 2010, he filed an Objection to Exemptions, which was denied by the court on August 9, 2010. The debtors allege that the lift stay motion and objection to exemptions were frivolous, though no formal request for sanctions was ever made (nor is one being made here). The motions are indeed thin (though this court too declines to find that they transgress Rule 9011). On September 16, 2010, Ms. Jones filed the complaint against the debtor with the TREC. The claims held by Ms. Jones in the TREC action are also the subject of the cause of action that was tried to judgment in state court. The judgment stands, of course, but it can now only be enforced in this bankruptcy case as an ordinary unsecured claim.

The debtors have requested that Ms. Jones and Mr. Wilson be held in contempt for violation of section 362. They also request damages, sanctions, attorney's fees and costs. While the debtors' motion is called a motion for contempt it could also be read as an action for violation of the stay pursuant to section 362(k). The motion was reset a number of times to accommodate Ms. Jones, who resides in California. Despite these efforts, when this matter was finally heard, Wilson informed the court (and the debtor) that Ms. Jones was unavoidably unable to be present at the hearing. Wilson did not request a further continuance. As Ms. Wilson resides beyond subpoena range, it was not possible to compel her attendance. No competent evidence to support Mr. Wilson's explanation for Ms. Jones' not appearing was presented.

*Legal Analysis –Contempt*

The first issue to be addressed is whether the actions of Ms. Jones and her attorney constituted a violation of the automatic stay. The debtors claim that Ms. Jones and Mr. Wilson violated the automatic when they filed their TREC complaint against the debtors alleging claims that were the subject of Ms. Jones' pre-petition lawsuit against the debtors. The complaint was filed post-petition.

Section 362(a)(1) provides that "a petition filed under section 301 . . . of this title . . . operates as a stay, applicable to all entities, of -- (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceedings against a debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." *See* 11 U.S.C. § 362(a)(1). The stay also applies to "any act to collect, assess, or

recover a claim against the debtor that arose before the commencement of the case[.]" § 362(a)(6). While section 362(a)(1) generally stays administrative and license revocation proceedings, *see, e.g., In re National Cattle Congress, Inc.*, 179 B.R. 588, 594 (Bankr. N.D. Iowa 1995) (noting that the legislative history of section 362(a)(1) makes clear that the stay applies to "all proceedings … including arbitration, license revocation, administrative, and judicial proceedings"), section 362(b)(4) provides an exception to the stay for certain proceedings.

Section 362(b)(4) says that the automatic stay does not apply to "the commencement or continuation of an action or proceeding by a governmental unit … to enforce such governmental unit's … police or regulatory power[.]" 11 U.S.C. § 362(b)(4). This exception applies "only where (i) the action is brought *by the government*, and (ii) the action seeks *to vindicate the public interest*, as opposed to a specific individual's or entity's rights." *United States Int'l Trade Comm'n v. Jaffe*, 433 B.R. 538, 543 (E.D. Va. 2010) (emphasis added); *see also In re Wade*, 948 F.2d 1122, 1124 (9th Cir. 1991) (finding state bar disciplinary proceeding exempt from automatic stay and noting that "[t]he purposes of the Bar's disciplinary proceedings are (1) 'to protect the public, the profession, and the administration of justice,' and (2) 'to deter other lawyers from improper conduct.'"); *In re North*, 128 B.R. 592, 601 (Bankr. D. Vt. 1991) (listing cases and stating that "state regulatory licensing schemes that meet the § 362(a)(4)'s 'governmental unit' exception include police or regulatory actions motivated to protect public health and safety"). Here, the complaint Ms. Jones filed with TREC alleges fraud, among other things, and seeks the revocation of the debtors' professional licenses. Accordingly, any proceeding initiated by TREC based on Ms. Jones' complaint would

likely satisfy this public interest requirement insofar as the TREC's pursuit of the action, even if such action happened to also benefit the complainants. In *Chao v. Hosp. Staffing Servs., Inc.*, the Sixth Circuit recognized that

> courts should examine the type of enforcement action brought [by the governmental unit] and the relationship between a particular suit and Congress's (or a state's) declared public policy. When an action furthers both public and private interests and the private interests do not significantly outweigh the public benefit from enforcement, courts should defer to the legislature's decision to vest enforcement authority in the executive and recognize such actions as within 'such governmental unit's police and regulatory power,' as that terms is used in § 362(b)(4). However, when the action incidentally serves public interests but more substantially adjudicates private rights, courts should regard the suit as outside the police power exception, particularly when a successful suit would result in a pecuniary advantage to certain private parties vis-à-vis other creditors of the estate, contrary to the Bankruptcy Code's priorities.

*Id.,* 270 F.3d 374, 390 (6th Cir. 2001).

TREC's conduct is not at issue here, however. The debtor has not named the TREC as a party against whom it seeks a contempt finding. Rather, the debtors maintain that it is the actions of Ms. Jones and her attorney, in filing the complaint with TREC in the first place that, on the facts of this case, violate the automatic stay. Jones and Wilson, in response, cite *McMullen v. Sevigny (In re McMullen)*, 386 F.3d 320 (1st Cir. 2004) for the proposition that their filing the complaint with TREC also fell under the protections of section 362(b)(4). In *McMullen*, the debtor contended that plaintiffs who had there filed a complaint against the debtor with the Massachusetts Division of Registration for Real Estate Agents after the debtor had filed for chapter 13 had violated by the automatic stay by doing so. *Id.* at 324. The complaint alleged that the debtor had illegally retained the plaintiffs' security deposit and sought the revocation of the debtor's real estate license. *Id.* at 325. The court found that the state agency proceeding against

5

the debtor fell squarely within the section 362(b)(4) exception to the stay, stating "the disciplinary proceeding before the Board was designed to serve—and did in fact principally serve—to protect the public in the future, rather than to seek recompense for the alleged financial losses sustained by the [plaintiffs]." *Id.* at 326-27. The court then addressed whether the actions of the plaintiff in filing the complaint with the Board in the first place violated the stay -- the same question presented here. The court concluded that the mere filing of a complaint with the state real estate board did not violate the stay. *Id.* at 328. In reaching that conclusion, the First Circuit rejected the reasoning of the bankruptcy court in *In re Byrd* to the effect that creditors who approach governmental authorities post-petition to complain about a debtor's unlawful conduct violate the stay by doing so. The *Byrd* court had stated:

> The filing of a bankruptcy action should have no impact on whether a prosecuting entity elects to commence or continue a criminal action against a debtor, even if the action is based on a debt that will be dealt with in the bankruptcy case. A bankruptcy filing does, however, preclude a creditor from seeking to pursue criminal charges against a debtor for the primary purpose of attempting to recover a debt. Any effort to do so would violate the automatic stay and, potentially, the discharge injunction provisions of §§ 362(a) and 524(a)(2).
>
> Practically speaking, the import of the court's decision is that once a debtor files a petition for bankruptcy, a disgruntled creditor may not then approach a governmental prosecutorial entity in order to prompt a criminal action to recover the debt. If the creditor already has complained to authorities by the time a petition is filed, those authorities may commence or continue a criminal prosecution, even one intended to result in direct restitution to the victim/creditor, as they see fit. But if the debtor files for bankruptcy before a creditor complains to prosecuting authorities, that complaint -- though it may still, in the discretion of prosecutors, result in a criminal prosecution -- may constitute a violation of the automatic stay or discharge injunction. *Cf.* § 524(a)(2) (enjoining the use of actions to collect debts after discharge).

6

*In re Byrd*, 256 B.R. 246, 252 (Bankr. E.D.N.C. 2000). The *McMullen* court distinguished *Byrd* on grounds that *Byrd* involved a criminal proceeding, "which implicated unique federal-court abstention issues." *McMullen*, 386 F.3d at 327. But *McMullen* also noted that the statement in *Byrd* that third parties who approach governmental authorities post petition would violate the stay was overbroad. Said the court:

> A private party's reporting of wrongful conduct to governmental regulatory authorities is neither the commencement of a proceeding under subsection 362(a)(1), nor *necessarily* an 'act to collect' under subsection 362(a)(6). Although we broadly construe the automatic stay in many contexts, the same sound public policy reasons which undergird the subsection 362(b)(4) exception counsel against any rule which might dissuade private parties from providing governmental regulators with information which might require enforcement measures to protect the public from imminent harm.

*Id*. at 328 (emphasis added).

*McMullen* is distinguishable from this case. First, the initiation of a TREC complaint by Ms. Jones, prepared by Mr. Wilson, her attorney, was done with the full knowledge that, once such a complaint was filed, the TREC would be obligated to investigate the allegations if the complaint, together with any evidence submitted with the complaint, provided reasonable cause for an investigation. *See* TEX. OCC. CODE § 1101.204 (2010) ("The commission shall investigate the actions and records of a license holder if: …") (emphasis added). The Commission has no discretion in deciding whether to investigate if the complaint provides sufficient grounds for an investigation. The commission apparently does not conduct a pre-investigation to determine if the complaint has merit. Wilson, Ms. Jones' attorney, was well familiar with the process, and knew what the consequences of initiating that process would be. He had also warned the debtor in the meeting at the courthouse after Wilson had obtained the judgment for

7

his client that, if the debtor filed for bankruptcy, he would make sure that she lost her real estate license. The complaint is consistent with that threat. These were not the facts in *McMullen*, which noted that there was expressly evidence to the contrary in that record regarding the intentions of the complaining party. In addition, the Massachusetts statute, unlike the Texas statute, did not compel the agency to commence an action without first satisfying itself that the pursuit such an action was warranted.

In *United Stated International Trade Commission v. Jaffe*, the district court for the Eastern District of Virginia examined whether a proceeding before the ITC, based upon information initially provided to the ITC by a private party, fell within the section 362(b)(4) exception to the automatic stay. *Id.*, 433 B.R. 538, 543-44 (E.D. Va. 2010). The court concluded that the ITC proceeding did fall within the exception, noting that,

> [w]here, as here, the ITC § 337 investigation relies on information submitted in a complaint by a private party, it is noteworthy that the filing of the complaint does not initiate a formal ITC § 337 investigation; rather, the action simply results in a 'pre-institution proceeding,' in which the ITC 'examines the complaint for sufficiency and compliance,' and performs a preliminary investigation.

*Id.* at 541. The court concluded that "where, as here, a private party files a complaint upon which a government agency chooses independently to commence an investigation, the government agency's investigation is an action brought by a governmental unit." *Id.* at 544 (emphasis added). Here, by contrast, the filing of a complaint that stated the requisite grounds for an investigation commences such an investigation, without any independent discretion on the part of the Commission. The TREC had no independent choice in the matter once that complaint was filed. The institution of an action that necessarily required further prosecution was not the mere discharge of a public duty, as it was found to be in *McMullen.* Wilson remonstrations to

the contrary notwithstanding, this complaint was carefully prepared by Wilson, acting as Jones' lawyer. Jones herself resides in California, not Texas. Though that fact certainly does not deprive her of standing, or of the protections of the law of Texas when she does business here, her "pure as the driven snow" motivations are suspect when she is unlikely ever to have to do business with Reyes again. The filing of this complaint is more correctly viewed as Wilson's following up on his threats -- and his hope to recover his judgment from the debtor indirectly, by way of the TREC. Viewed that way, Jones' initiation of this complaint, carefully crafted by Wilson, is better understood as the commencement or continuation of a proceeding against the debtor to collect on a pre-petition debt, in violation of section 362(a)(1). *See In re Gull Air, Inc.*, 890 F.2d 1255, 1262 (1st Cir. 1989) ("As the legislative history of the automatic stay provision reveals, the scope of section 362(a)(1) is broad, staying all proceedings, including arbitration, license revocation, administrative and judicial proceedings.") (*citing* H.R. REP. NO. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S. CODE CONG. & ADMIN. NEWS 5787, 6297; S. REP. NO. 989, 95th Cong., 2d Sess. 50 (1978), *reprinted in* 1978 U.S. CODE CONG. & ADMIN. NEWS at 5836). Wilson even billed his client for his services, a choice that makes the most sense when viewed (from the client's perspective) as yet another step in the effort to collect on a judgment. Jones could have offered testimony to counter this fair inference -- but her absence itself is some evidence that the inference is warranted. *See Harry v. Safeway Stores, Inc.*, 215 F.Supp. 324, 326 (D.D.C. 1963) ("When a missing witness would thus substantially aid in developing the truth at the trial, and when such witness was peculiarly available to one of the parties, then the jury should be permitted to infer that such witness would have testified

9

unfavorably to such party unless the absence of the witness is satisfactorily explained. This is a salutary rule which helps to assure the presence at the trial of all witness who have relevant testimony"), *citing* WIGMORE ON EVIDENCE, 3d ed., ¶¶ 285-288.

The conduct of Ms. Jones and her attorney is also an attempt to collect on a pre-petition debt, in violation of section 362(a)(6). In *McMullen* the court found that the plaintiff's actions there in filing a complaint with the state real estate board did not violate section 362(a)(6), but not because such action would always be protected. Instead, the court concluded that there was no evidence that the plaintiffs had been "motivated by their desire to force [the debtor] into repaying the alleged debt." *Id.* at 328 (emphasis added). The court noted that

> "[a]lthough it is alleged that the [plaintiffs] harbored such a pecuniary interest in the recovery of their deposit from [the debtor's] funds, the suspension, revocation, or refusal to renew a real estate broker license are the only enumerated powers accorded the Board. Hence, the Board was neither empowered to compel [the debtor] to repay the deposit to the [plaintiffs], nor to award any other restitutionary remedy.

*Id.* at 326-27. The facts of our case are different. Here, there is compelling evidence that Ms. Jones, in filing her TREC action (and Mr. Wilson, as her lawyer), were both motivated by their pecuniary interest in recovering her judgment from the debtor. Multiple witnesses testified that Mr. Wilson threatened this very action if the debtors proceeded to file for bankruptcy rather than pay the judgment. In fact, Wilson himself ended up admitting that he said those words, though he of course denied intending to follow through. Ms. Jones, the complaining witness on the TREC complaint, did not appear at the hearing, ostensibly because she "happened to be out of town on the date of the hearing" (though the hearing had been rescheduled a number of times to accommodate Ms. Wilson's schedule). Furthermore, Mr. Wilson charged Ms. Jones for

his time spent preparing the TREC complaint, indicating that, so far as the client was concerned, the complaint was just one more step in the process of trying to collect on the judgment. These facts lead the court to believe that Ms. Jones and Mr. Wilson filed the TREC complaint primarily with view to exerting pressure on the debtors to pay the state court judgment, and not for the benefit of the public at large.

The TREC, unlike the real estate board in *McMullen*, *does* have the authority to compel payment from the debtors. The TREC maintains a Real Estate Recovery Trust Account from which complainants may receive payment on their claims. *See* TEX. OCC. CODE § 1101.606. In turn, the TREC "is subrogated to all rights of a judgment creditor to the extent of an amount paid from the trust account." TEX. OCC. CODE § 1101.612. Mr. Wilson admitted that, in order to recover from the Real Estate Recovery Trust Account, claimants must first file a claim with the TREC that is independent from any license revocation complaint. Indeed, section 1101.606(a) provides that,

> (a) an aggrieved person who obtains a court judgment against a license or certificate holder for an act described by Section 1101.602 may, after final judgment is entered, execution returned nulla bona, and a judgment lien perfected, file a verified claim in the court that entered the judgment.
>
> (b) After the 20th day after the date the aggrieved person gives written notice of the claim to the commission and judgment debtor, the person may apply to the court that entered the judgment for an order for payment from the trust account of the amount unpaid on the judgment.

TEX. OCC. CODE § 1101.606(a), (b). Mr. Wilson maintained that because he and Ms. Jones have not commenced the procedure described above to collect from the recovery fund, this court should conclude that their complaint was filed in the public interest and not as an attempt to collect on a debt in violation of section 362(a)(6). This argument is disingenuous. It is unlikely that Mr. Wilson would have even had time to comply with the

above procedures during the short gap (approximately 1 month) between entry of the state court jury verdict and the filing of the debtors' bankruptcy petition. Additionally, Section 1101.606(c) of the Texas Occupations Code provides that,

> If an aggrieved person is precluded by action of a bankruptcy court from executing a judgment or perfecting a judgment lien as required by Subsection (a), the person shall verify to the commission that the person has made a good faith effort to protect the judgment from being discharged in bankruptcy.

TEX. OCC. CODE § 1101.606(c). Ms. Jones has filed a complaint to determine dischargeability in this case (see Docket No. 31.), thus laying the groundwork for payment from the recovery fund.

In sum, as the *McMullen* court recognized (but failed to implement), "given the expansiveness of subsection 362(a), the exception contained in subsection 362(b)(4) is to be narrowly construed." *Id.,* 386 F.3d at 325. It should be applied only when an action against the debtor has been brought by the government. *See New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir. N.Y. 1991) ("11 U.S.C. § 362(b)(4) exempts 'an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.' It requires that such suits be brought by governmental units, not private persons."); *United States ex rel. Kolbeck v. Point Blank Solutions, Inc.*, 2011 U.S. Dist. LEXIS 9195, at *7-8 (E.D. Va. Jan. 28, 2011) (concluding that "both the statutory language and the legislative history [of section 362(b)(4)] demonstrate that the term 'governmental unit' in the bankruptcy code refers exclusively to actual governmental groups," and refusing to find action conducted solely by a qui tam relator to be an "action or proceeding by a governmental unit") (internal quotations and citation omitted). *See also In re Pincombe*, 256 B.R. 774, 781-82 (Bankr. N.D. Ill. 2000) (holding that

private party had not violated the stay by filing an employment discrimination complaint with the state labor agency five months before the debtor filed for bankruptcy); *but see McMullen*, 386 F.3d at 328, n. 3 (refusing to "indulge the negative inference that a similar post-petition complaint [to that in *Pincombe*] would violate the stay," because "the *Pincombe* court plainly and simply had no occasion to determine that matter"). Where the post-petition actions of a private party initiate government proceedings against the debtor, such conduct constitutes the commencement of an action against the debtor in violation of section 362(a)(1), and, depending on the facts, may constitute an attempt to collect a pre-petition debt in violation of section 362(a)(6).

*Remedies*

1. *Civil Contempt*

Bankruptcy courts in the Fifth Circuit have the authority to conduct civil contempt proceedings. *Placid Refining Company v. Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609, 613 (5th Cir.1997); *In re Unclaimed Freight of Monroe, Inc.*, 244 B.R. 358, 364 (Bankr. W.D. La. 1999). The Fifth Circuit has delineated the test for civil contempt. In *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries, Inc.*, the Court observed that the test for contempt requires showing that (1) a court order was in effect; (2) the order required certain conduct; and (3) the respondent failed to comply with the order. *Id.,* 177 F.3d 380, 382 (5th Cir.1999). Bankruptcy courts may enter contempt orders for violations of the automatic stay. *See LATCL&F, Inc. v. Milbank (In re LATCL&F, Inc.)*, 2001 U.S. Dist. LEXIS 12478, at *11 (N.D. Tex. Aug. 14, 2001) (affirming bankruptcy court's finding of civil contempt for violation of the automatic stay).

In civil contempt proceedings the burden of proof is clear and convincing, as opposed to preponderance of evidence. *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 401 (5th Cir.1987). Clear and convincing evidence is "that weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts' of the case." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995). "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Id.*, (*quoting Securities and Exchange Commission v. First Financial Group of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir.1981)). Intent is not an issue in civil contempt proceedings; rather, "the question is not one of intent but whether the alleged contemnors have complied with the court's order." *Jim Walter Resources, Inc. v. International Union, etc.*, 609 F.2d 165, 168 (5th Cir.1980). Willfulness is not an element of civil contempt. *Petroleos Mexicanos*, 826 F.2d at 401. Once the movant has established the failure to comply with an order, then the respondent bears the burden of showing mitigating circumstances that might permit the court to withhold exercising its contempt power. *Whitfield v. Pennington*, 832 F.2d 909, 914 (5th Cir.1987). A party may avoid a contempt finding where it can show that it has substantially complied with the order, or has made every reasonable effort to comply. *United States Steel Corp. v. United Mine Workers*, 598 F.2d 363, 368 (5th Cir.1979).

Regarding damages, the debtors have sought "damages, sanctions, attorney's fees and costs." The court may order payment of actual damages, including attorney's fees and costs, from one party to another as a civil contempt sanction. *See Petroleos Mexicanos*, 826 F.2d at 397, 408 (affirming district court's award of attorney's fees and costs as compensatory damages incurred in bringing contempt action). Compensatory damages awarded as a sanction for violation of a court order are to "[reimburse] the injured party for the losses and expenses incurred because of his adversary's noncompliance." *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir.1976); *see also Petroleos Mexicanos*, 826 F.2d at 399 ("sanctions for civil contempt are meant to be wholly remedial and serve to benefit the party who has suffered injury or loss at the hands of the contemnor."). On a finding of contempt, an award of attorney's fees is appropriate. *See Dow Chemical Co. v. Chem. Cleaning, Inc.*, 434 F.2d 1212, 1215 (5th Cir. 1970), *cert. denied*, 402 U.S. 945 (1971) ("There are contempt cases in abundant number holding that a court has discretion to award reasonable attorney's fees and other expenses necessary to make an innocent party whole."); *Federal Deposit Ins. Corp. v. LeGrand*, 43, F.3d 163, 172 (5th Cir. 1995) (affirming award of attorney's fees for prosecuting motion for civil contempt); *In re Musslewhite*, 270 B.R. 72, 78 (S.D. Tex. 2000) (affirming bankruptcy court's civil contempt sanction awarding attorney's fees to moving party).

*Section 362(k)*

The court has found that Ms. Jones and Mr. Wilson violated the automatic when they filed their TREC complaint against the debtors alleging claims that were the subject of Ms. Jones' pre-petition lawsuit against the debtors. "[A] petition filed under section

301 . . . of this title . . . operates as a stay, applicable to all entities, of -- (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceedings against a debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." *See* 11 U.S.C. § 362(a)(1). "The Bankruptcy Code creates a private right of action for a debtor … to bring an action against a person who willfully violates the automatic stay to the injury of the debtor." *Young v. Repine (In re Repine)*, 536 F.3d 512, 519 (5th Cir. 2008). Section 362(k) states, "[e]xcept as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). "There are three elements for a claim under Section 362(k): (1) [the creditor] must have known of the existence of the stay; (2) [the creditor's] acts must have been intentional; and (3) [the creditor's] acts must have violated the stay. *Id*. (citing *In re Chesnut*, 422 F.3d 298, 302 (5th Cir. 2005)). Here, the debtors have not expressly alleged a willful violation of the stay, but the facts suggest as much.

It is clear that Ms. Jones and Mr. Wilson filed the TREC action against the debtors knowing that a bankruptcy stay was in place. They filed the TREC action approximately two months after seeking to lift the stay in the debtors' bankruptcy c*ase. These facts are sufficient to make out a claim for damages under section 362(k). See Dugas v. Claron Corp.*, 2010 U.S. Dist. LEXIS 86834, at *11 (E.D. Tex. Aug. 23, 2010) ("A 'willful' violation does not require specific intent to violate the automatic stay; rather,

the debtor is entitled to relief if the defendant knew of the automatic stay and its actions were intentional."). Regarding damages, the *Dugas* court stated,

> Section 362(k)(1) provides that an individual injured by a violation of the automatic stay shall recover 'actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.' '[Actual] damages under § 362(k) must be proven with reasonable certainty and may not be speculative or based on conjecture.'"

*Dugas v. Claron Corp.*, 2010 U.S. Dist. LEXIS 86834, at *15 (quoting section 362(k)(1) and In re Collier, 410 B.R. 464, 476 (Bankr. E.D. Tex. 2009)). Attorney's fees and costs may be awarded as damages for willful violation of the stay. *See Young*, 536 F.3d at 522 ("it is proper to award attorney's fees that were incurred prosecuting a section 362 (k) claim."); *Dugas*, 2010 U.S. Dist. LEXIS 86834, at *6, 15-16 (affirming bankruptcy court's award of actual damages in the amount of movant's costs incurred in prosecuting the stay violation); *Tom v. Countrywide Home Loans, Inc. (In re Tom)*, 2005 U.S. Dist. LEXIS 44923, at *20 (S.D. Tex. 2005) ("Fees and costs experienced by the injured party in prosecuting an appeal are damages that result from violation of the automatic stay."). The facts of this case warrant the conclusion that Ms. Jones and Mr. Wilson willfully violated the stay; the debtor is thus entitled to recover, at the least, their attorney's fees and costs as actual damages.

Punitive damages may be awarded in appropriate circumstances. However, "[t]he Fifth Circuit has interpreted 'appropriate circumstances' to require 'egregious, intentional misconduct on the violator's part.'" *Id.* (quoting *In re Repine*, 536 F.3d at 521). In *Young*, (relying on the Eighth Circuit case *Knaus*, below) the court affirmed the bankruptcy court's award of punitive damages after finding that the conduct at issue was egregious. *Id.*, 536 F.3d at 521. In *Young* the offending party had "ignored [] warnings that efforts to

collect her fees would violate the automatic stay, ignored [her client's] wishes that [debtor] be released from jail, failed to appear before the Bankruptcy Court despite being ordered to do so, and persisted in her efforts to collect her fees despite the Bankruptcy Court's admonishment that she cease all collection efforts." *Id.*; *see also Knaus v. Concordia Lumber Co. (In re Knaus)*, 889 F.2d 773, 775-76 (8th Cir. 1989) (finding egregious conduct where creditor, in violation of the stay, refused to turn over debtor's property that had been seized by sheriff, but not yet, and where creditor also attempted to have debtor ex-communicated). In *Knaus*, the controlling factors were the creditor's willful refusal to comply with the requirements of the stay (i.e. to return the seized property to the debtor) and his attempts to punish the debtor for exercising his right to file for bankruptcy. *Id.* at 776. Here, the grounds are present for such an award, thanks to the clear evidence that Wilson's actions were an attempt to punish the debtor for exercising her right to file for bankruptcy protection.

*Conclusion*

The court concludes that both Wilson and Jones violated the automatic stay by intentionally prosecuting the TREC complaint, both to punish the debtor for filing, and to exert pressure on the debtor in order to collect on the judgment. These sorts of hardball tactics are always distasteful, but they are legal outside of bankruptcy. Once bankruptcy has been initiated however, greater caution has to be exercised. Every case has its own facts, and while the facts here warrant the conclusion that the initiation of this complaint violated the stay, different facts might well compel a different conclusion. The court awards the debtor her attorneys' fees and costs, both in the prosecution of this motion and in the defense of the TREC action. The debtor is directed to prepare a formal fee

application, and to serve it upon opposing counsel, setting out the fees incurred, consistent with this decision.

The court further finds and concludes that the evidence warrants the imposition of a punitive award on Wilson for his conduct. The award is in the amount of $5,000.

A form of order consistent with this opinion will be separately entered.

*# # #*